IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BOBBY RAY HAILEY, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:06-CV-0167-H (BH) |
| ) | ECF |
| NATHANIEL QUARTERMAN, Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|     Respondent. ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A. Nature of the Case**

While in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his April 20, 2000 conviction for driving while intoxicated (DWI) in Navarro County (Cause No. 00-00-27291-CR). Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

In April 1999, the State indicted petitioner for "DWI 3RD/NO TEST" that allegedly occurred on or about March 21, 1999. *See* CR[1] at 4-5. Prior to trial, petitioner moved to suppress evi-

---

[1] "CR" refers to the Clerk's Record in Cause No. 00-00-27291-CR.

dence regarding a blood sample taken without petitioner's consent, and court considered the motion during the trial in April 2000. *See id.* at 15-16, 54-70.

At trial, the State called an eyewitness, Frankie Medrano, who testified that he encountered petitioner on March 21, 1999, when he avoided a head-on collision with petitioner's vehicle by steering his own vehicle into a ditch. Rep.'s R., Vol. IV at 18-19 [hereinafter cited as RR-volume # at page]. According to Medrano, petitioner twice steered his vehicle into the guardrail before crossing into oncoming traffic, narrowly missing Medrano's vehicle, and driving off the road into a creek. *Id.* at 19-20. When Medrano checked on petitioner, he smelled a strong odor of alcohol emanating from petitioner and his vehicle. *Id.* at 22. Because petitioner was staggering and falling after exiting his vehicle, Medrano concluded that petitioner was "heavily drunk." *Id.* at 23.

The State also called law enforcement personnel who had arrived on the scene shortly after petitioner drove his vehicle into the creek. Officer Gannon and Trooper Simmons characterized petitioner as extremely or highly intoxicated and testified that petitioner had a strong odor of alcohol on his breath, slurred speech, and poor balance. *Id.* at 29-32, 41-44. Both officers testified that due to intoxication by alcohol, petitioner had lost the use of his mental and physical faculties. *Id.* at 31-32, 44. Trooper Simmons also testified that petitioner failed a field sobriety test given to him and that petitioner was "too intoxicated" to do other tests. *Id.* at 42-43, 47. According to Trooper Simmons, the failed sobriety test indicated that petitioner "was at the legal limit or over." *Id.* at 44. Trooper Simmons testified that he had Officer Gannon transport petitioner to a local hospital due to a fear of alcohol poisoning, and that on the way to the hospital, petitioner "continued going in and out of consciousness." *Id.* at 36, 45. While at the hospital, petitioner refused to consent to a blood test. *Id.* at 45, 51. Trooper Simmons later testified that petitioner "was the most intoxicated I had

2

ever seen a person." *Id.* at 108. Petitioner testified that he drove into the ditch because he was tired and that he only began to drink after the accident. *Id.* at 76-87.

The court overruled the motion to suppress at trial and admitted a medical record showing the results of a blood test taken on March 21, 1999. *See id.* at 54-70, 74. The medical report showed petitioner's blood-alcohol level to be 454.24 mg/dL with a fatal level usually being 400 mg/dL and 150 to 350 mg/dL usually indicative of intoxication. *See* State's Ex. 1 (found in RR-VI).

After hearing the testimony and reviewing the documentary evidence, a jury found petitioner guilty on April 19, 2000. *See id.* at 129. The next day, the jury assessed punishment at ten years imprisonment and a $5,000 fine. *See* RR-V at 4. The trial court sentenced him in accordance with that assessment. *Id.* at 5.

On June 20, 2001, the court of appeals reversed the conviction and remanded the case for further proceedings. *See Hailey v. State*, 50 S.W.3d 636, 641 (Tex. App. – Waco 2001, pet. granted). The State filed a petition for discretionary review, and on September 25, 2002, the Texas Court of Criminal Appeals reversed the decision of the court of appeals. *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002). On October 6, 2003, the United States Supreme Court denied petitioner's petition for writ of certiorari. *Hailey v. Texas*, 538 U.S. 1060 (2003).

On November 3, 2003, petitioner filed a state application for writ of habeas corpus. *See* S.H. Tr.[2] at 29. The Texas Court of Criminal Appeals denied that application without written order on the findings of the trial court without a hearing. *Ex parte Hailey*, No. 57,762-02, slip op. at 1 (Tex. Crim. App. Jan. 26, 2005).

---

[2] "S.H. Tr." denotes the state habeas records attached to *Ex parte Hailey*, No. 57,762-02, slip op. (Tex. Crim. App. Jan. 26, 2005).

On January 25, 2006, petitioner filed the instant petition with numerous attachments including a supporting memorandum. (Pet. Writ of Habeas Corpus (Pet.) at 1-10 and attachments.)[3] On March 5, 2007, respondent filed his answer. (Answer at 1.) On April 3, 2007, petitioner filed a reply brief. (*See* Petr. Rebuttal to Answer, hereinafter referred to as Reply.)

**C. <u>Substantive Issues</u>**

In this action, Petitioner raises claims of (1) unconstitutional search and seizure; (2) unlawful arrest; (3) suppression of evidence; (4) improper action by grand jury; and (5) ineffective assistance of counsel. (Pet. at 7-9.)

**D. <u>Procedural Issues</u>**

Respondent concedes that petitioner has sufficiently exhausted his state remedies with respect to the first three claims raised in the instant petition, but argues that petitioner has not exhausted the fourth and fifth claims. (Answer at 3-6.) He does not seek dismissal for the failure to exhaust, but rather on the related ground of procedural bar. (*Id.*) He also addresses the claims on the merits. (*See id.* at 12-18.) In reply, petitioner concedes that he may have used slightly different language from his state application for writ of habeas corpus when raising Claims 4 and 5 here, but he definitively asserts that he raised Claims 4 and 5 in his state application. (Reply at 1.)[4]

Petitioner characterizes Claim 4 as a "conviction obtained by the action of a grand jury" and goes on to argue that the grand jury had no knowledge of his blood test. (Pet. at 8.) Respondent construes Claim 4 as asserting that the grand jury lacked sufficient evidence to indict petitioner for

---

[3] The petition has two pages labeled as page nine. The Court refers to the second page nine as page ten.

[4] Petitioner does not include page numbers for his reply brief. For ease of reference, the Court has numbered the five-page brief commencing with page one.

DWI. (Answer at 4.) In his state application for writ of habeas corpus, petitioner characterizes the indictment as defective because it states on its face "No Test" but the trial court brought up every positive test. S.H. Tr. at 34. Petitioner also states in the state application that there is no evidence to support his indictment. *Id.* A claim of no evidence is tantamount to a claim of insufficient evidence. Liberally construing petitioner's claims, the Court finds that Claim 4 was presented to the Texas Court of Criminal Appeals.

In Claim 5, petitioner claims that he received ineffective assistance of trial counsel because his trial attorney did not act as his advocate when he failed to make himself available for phone calls and failed to utilize evidence helpful to his defense, namely Ex. L to the instant petition. (Pet. at 9; Mem. Supp. at 1-D.) He argues that had counsel utilized Ex. L, the outcome of trial would have differed. (Pet. at 9; Mem. Supp. at 1-D.) With respect to ineffective assistance of appellate counsel, petitioner states that his attorney (1) failed to provide him information so that he could file a pro se appellate brief and (2) misled him regarding the granting of a new trial. (Pet. at 9.) In his state application for writ of habeas corpus, petitioner asserted that he received ineffective assistance of trial and appellate counsel. S.H. Tr. at 34. He specifically asserted that counsel advocated for the State rather than for him and that trial counsel concealed a "DPS documentary letter" pertaining to the blood draw and assault by the officer. *Id.* (appears to refer to concealing the letter (Ex. L) from the jury).

The comparison of petitioner's state and federal applications for writ of habeas corpus reveals some similarities and differences between Claim 5 asserted here and the claim of ineffective assistance of counsel asserted at the state level. In any event, because it appears that petitioner is entitled to no habeas relief on any aspect of Claim 5, the Court bypasses the procedural bar issue and pro-

ceeds to the merits of claims. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

For all of these reasons, the Court proceeds to the merits of petitioner's asserted claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

6

ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the AEDPA standards apply to the claims petitioner raised in his state application for writ of habeas corpus.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind to the extent applicable, the Court proceeds to address the merits of petitioner's claims.

7

## III. FOURTH AMENDMENT CLAIMS

In Claims 1 and 2, petitioner asserts that his conviction was obtained by use of evidence gained from an unconstitutional search and seizure and an unlawful arrest. (Pet. at 7.) Such claims arise under the Fourth Amendment to the United States Constitution. *See Avery v. Procunier*, 750 F.2d 444, 448 (5th Cir. 1985). This Court cannot grant federal habeas relief on such Fourth Amendment claims when "the State has provided an opportunity for full and fair litigation" of such claims. *See Stone v. Powell*, 428 U.S. 465, 494 (1976).

Before trial commenced, petitioner moved to suppress evidence obtained from the alleged illegal arrest and search and seizure. *See* CR at 15-16. During trial, the court heard testimony, denied the motion, and admitted a medical report showing a blood test taken without petitioner's consent. *See* RR-IV at 54-70, 74. On appeal, petitioner successfully challenged the admissibility of the report. *See Hailey v. State*, 50 S.W.3d 636, 638-41 (Tex. App. – Waco 2001, pet. granted). However, the Texas Court of Criminal Appeals reversed the decision of the court of appeals because the court of appeals had reversed the conviction on a theory not presented to the trial court. *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002). Because petitioner has had an opportunity to fully and fairly litigate his Fourth Amendment claims at the state level, and in fact did litigate such claims at the state level to some extent, *Stone* bars this Court's consideration of the claims on habeas review. Claims 1 and 2 entitle petitioner to no federal habeas relief.

## IV. SUPPRESSION OF EXCULPATORY EVIDENCE

In his third claim, petitioner asserts that the State suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The alleged suppression relates to a faxed document that petitioner identifies and attaches to his petition as Ex. L. (*See* Pet. at 7-8.) Exhibit L is letter to petitioner from the Texas Department of Public Safety dated August 11, 1999. (*See* Ex. L attached to Pet.) Among other things, the letter informed petitioner:

> Our records indicate the arresting officer served a Notice of Suspension to you on March 21, 1999. A review of the documents reported that when you were asked to submit to a blood test, you refused. If there is an error in the documents reported,

> the officer will need to submit information to our office indicating such.
>
> You have sent documentation that the hospital took a blood specimen. The hospital drew the blood specimen for other purposes that [sic] at the officer's request. . . .

(*See id.*) The alleged suppression appears to concern the documents regarding his refusal to submit to a blood test.[5] (*See* Pet. at 7-8.)

In *Brady*, the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. 373 U.S. at 87. "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"[E]vidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995). Suppressed evidence is not considered material within the meaning of *Brady* when similar evidence is admitted before the trier of fact. *E.g., Jackson v. Johnson*, 194 F.3d 641, 650 (5th Cir. 1999); *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678

---

[5] At times, it appears that petitioner contends that Ex. L was itself suppressed from him. The Court finds no merit to such contention because Ex. L is a letter addressed and sent to petitioner. Furthermore, petitioner states in his fifth claim that during trial counsel asked him whether he sent "the document 'L'" to which he replied "yes." Additionally, in his supporting memorandum, petitioner specifically states that he faxed a copy of Ex. L to his attorney before trial. (*See* Mem. Supp. at 1-B.) Consequently, it is clear that both counsel and petitioner had Ex. L at or before trial.

(1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring). In any event, the touchstone inquiry remains "whether the evidentiary suppression 'undermines our confidence' that the factfinder would have reached the same result." *Id.* at 300-01.

In this instance, petitioner appears to allege that the State suppressed documents in the possession of the Texas Department of Public Safety which reveal that petitioner refused to take a blood test. However, as already mentioned, Trooper Simmons testified at trial that petitioner refused to consent to a blood test. *See* RR-IV at 45, 51. Consequently, even assuming that the State had access to the allegedly suppressed documents and actually withheld them from petitioner, the Court finds no *Brady* violation. The allegedly suppressed documents are not material within the meaning of *Brady*. There is no significant possibility of a different result at trial had the allegedly withheld documents been given to petitioner.[6] The alleged suppression does not undermine confidence in the verdict. The State presented overwhelming evidence of guilt at trial even if one does not consider the medical report that was admitted at trial. Petitioner's *Brady* claim entitles him to no habeas relief.[7]

## V. INDICTMENT ISSUE

In Claim 4, petitioner complains of improper action by the grand jury. As previously discussed, although the basis for Claim 4 is not entirely clear, the claim appears similar to a claim raised in petitioner's state habeas application wherein petitioner asserted that the indictment against him was defective.

---

[6] Under Texas law, a person commits a DWI offense when he or she operates a motor vehicle in a public place while intoxicated. *See* Tex. Pen. Code Ann. §§ 49.04(a) (Vernon 2003). Texas law defines "intoxicated" as (1) "not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any other substance into the body", or (2) "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2). In Texas, evidence of intoxication may include slurred speech, bloodshot eyes, the odor of alcohol on the person or breath, unsteady balance, or a staggered gait. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985).

[7] To the extent petitioner asserts a claim under the Texas Constitution, such claim also does not state a claim for federal habeas relief. *See Collier v. Cockrell*, 300 F.3d 577, 585 (5th Cir. 2002).

To the extent Claim 4 challenges the sufficiency of the evidence to support his indictment, the claim fails to present a matter cognizable in this federal habeas corpus proceeding. *See Tijerina v. Estelle*, 692 F.2d 3, 6 (5th Cir. 1982). Furthermore, such challenge is not cognizable even under Texas law. *See State v. Rosenbaum*, 910 S.W.2d 934, 937 (Tex. Crim. App. 1994) (en banc); *State v. Zoch*, 846 S.W.2d 588, 589 (Tex. App. – Houston [14 Dist.] 1993, no pet.). Additionally, to the extent petitioner challenges the legal sufficiency of his indictment, such issue is also "not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). Federal courts, furthermore, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that the court passed on the merits of the sufficiency issue. *Id.* at 598-99. In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Petitioner raised the sufficiency of the indictment in his state application for writ of habeas corpus, the trial court found the indictment sufficient, and the Texas Court of Criminal Appeals denied the state application on the findings of the trial court. *See* S.H. Tr. at 34, 140; *Ex parte Hailey*, No. 57,762-02, slip op. at 1 (Tex. Crim. App. Jan. 26, 2005). The state court unquestionably passed on the merits of the claimed insufficiency. This Court will not review that explicit finding. *See Alexander*, 775 F.2d 598-99.

For all of these reasons, Claim 4 entitles petitioner to no federal habeas relief.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth claim, petitioner alleges that his trial and appellate attorneys rendered ineffective assistance of counsel. (*See* Pet. at 9.) He claims that his trial attorney rendered ineffective assistance when he failed to act as his advocate by failing to make himself available for phone calls and failing to utilize evidence helpful to his defense – Ex. L attached to Pet. (Pet. at 9; Mem. Supp. at 1-D.)

He claims that his appellate attorney rendered ineffective assistance by failing to provide him information so that he could file a pro se appellate brief and misleading him regarding the granting of a new trial. (Pet. at 9.)

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial. U.S. Const., art. VI. Criminal defendants, furthermore, have a constitutional right to effective assistance of counsel in their first appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963). To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. This two-part test also governs claims of ineffective assistance of appellate counsel. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). When evidence adduced at trial overwhelmingly establishes a petitioner's guilt, there is generally no reasonable probability that deficiencies at trial

affected the verdict. *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002); *Creel v. Johnson*, 162 F.3d 385, 396 (5th Cir. 1998). To show prejudice, when an attorney has "failed to adequately brief an issue on direct appeal, [petitioner] must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue." *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). Petitioner "must then demonstrate that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Petitioner has not carried the burdens imposed by *Strickland*. He has demonstrated no prejudice from the alleged deficiencies of trial counsel. He has shown no reasonable probability that the outcome of trial would have differed in the absence of the alleged deficiencies of counsel. The evidence presented at trial overwhelmingly established petitioner's guilt even without considering the medical report that showed petitioner's blood-alcohol content to be above the level for intoxication. The alleged deficiencies of counsel did not render the trial unreliable or fundamentally unfair. In the absence of prejudice, a claim of ineffective assistance of counsel entitles petitioner to no habeas relief. Petitioner has also demonstrated no prejudice from the alleged deficiencies of appellate counsel. He has shown no claim that he could have raised in a pro se appellate brief that would have altered the outcome on appeal. He has failed to show how the alleged misleading information regarding the granting of a new trial prejudiced him. Because appellate counsel initially succeeded on appeal, there was a point in time when petitioner indeed was granted a new trial. The fact that the Texas Court of Criminal Appeals later overturned the lower appellate court's reversal of the con-

viction does not mean that counsel's statement was wrong or misleading. Nevertheless, even assuming that counsel gave misleading information, petitioner has shown no prejudice from such information. The alleged deficiencies of appellate counsel did not render the proceedings unreliable or fundamentally unfair. Petitioner's claims of ineffective assistance of appellate counsel entitle him to no habeas relief.

## VII. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 11th day of April, 2008.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE